**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| Digital Retail Apps, Inc., <br><br> Plaintiff, <br> v. <br><br> Sam's Club West, Inc. d/b/a Sam's Club, <br><br> Defendant, | Civil Action No.: <br><br> **Jury Trial Demanded** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Digital Retail Apps, Inc. ("DRA"), by its undersigned attorneys, alleges claims of utility patent infringement against Defendant Sam's Club West, Inc. d/b/a Sam's Club ("Sam's Club"), with knowledge of its own acts and upon information and belief as to other matters, as follows:

### I. PARTIES

1. DRA is a private company having offices in Toronto and formerly also in San Francisco, California. Its current principal place of business is at Wildeboer Dellelce Place, 365 Bay Street, Suite 800, Toronto, Ontario, M5H 2V1, Canada.

2. Upon information and belief, Sam's Club is an Arkansas corporation and division of Wal-Mart Stores, Inc., headquartered at 2101 SE Simple Savings Drive, Bentonville, Arkansas 72712. Upon information and belief, Sam's Club may be served with process via its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## II. JURISDICTION AND VENUE

3. This action arises under the patent laws of the United States of America, 35 U.S.C. §§ 1 et seq. This Court has exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Sam's Club because: (1) Sam's Club has retail operations in this District, including at 3310 N. Fourth Street, Longview, Texas 75605; and (2) it has advertised, promoted, offered for use, used, made, or imported, and continues to advertise, promote, offer for use, use, make, or import infringing products and services at its facilities in this District.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1400(b), at least because Sam's Club has a regular and established place of business in this District, and has committed acts of patent infringement in this District. Sam's Club's acts of infringement in this District include but are not limited to use of Sam's Club Scan & Go and related equipment and back-end system(s) and server(s) ("Accused System") at Sam's Club store locations, including but not limited to the Sam's Club retail location at 3310 N. Fourth Street, Longview, Texas 75605.

## III. FACTUAL ALLEGATIONS UNDERLYING ALL CLAIMS

### A. Wendy MacKinnon

6. Ms. Wendy MacKinnon, formerly known as Wendy MacKinnon-Keith, is an expert in industry disruption, consumer behavior, channel partnerships and strategy. Ms. MacKinnon spent the first part of her career as a retail and consumer technology strategy consultant to Fortune 100 companies such as IBM, Ameritech, Nokia and Safeway. In working for such companies, Ms. MacKinnon would identify early signs of industry change and then help the

organization navigate the risks and market opportunities presented by the identified burgeoning changes.

7. By 2011, Ms. MacKinnon recognized the next disruptive event in retail sales was likely to be implementation of technologies that help to eliminate checkout lines at brick-and-mortar retail establishments.  Ms. MacKinnon then founded DRA, a retail mobile solutions company, which she hoped could create and market needed disruptive technologies.

### B. DRA's Product And Market Development Activities

8. DRA created an application called "SelfPay®," designed to move customers out of checkout lines and to a more contextual purchasing decision process.  Target customers for DRA's product were global and national chain retailers looking to offer their customers a truly mobile shopping and payment option, direct from the aisles of their physical store.

9. The product saved shoppers time by allowing them to skip the checkout line by using their own mobile device, for example their own smart phone, to scan in-store items, fill a shopping cart, and pay for the items in-app using a variety of supported payment methods, such as credit or debit cards, Apple Pay, PayPal, and others.  One benefit of DRA's SelfPay® product is that it brings the convenience and ease of online shopping into the spontaneous and often impulse-based in-store environment and directly into the hands of shoppers.

10. DRA's SelfPay® product integrated with retailers' payment and point of sale (POS) systems by interfacing between the shopper's mobile device and the retailer's back end computer systems and processes.  DRA's SelfPay® product thus improved and benefitted brick-and-mortar commerce.  DRA also built a partner pool that included industry leaders in payments, POS, and retail solutions and raised more than a million dollars in funding to fuel growth of the SelfPay® software products.

11.     To sell the application product, DRA worked with global payment companies including Visa, Synchrony Financial, and WorldPay, who showcased the SelfPay® technology at various corporate facilities. (A copy of Ms. MacKinnon's *Curriculum Vitae* is attached as Exhibit 1 and is incorporated in full herein.)

12.     DRA evangelized the technology in various articles and media events. (A copy of a listing of selected articles and media is set forth as Exhibit 2, which is incorporated in full herein.) That evangelization was somewhat facilitated by the fact that SelfPay® for retail customers and SelfPay® Staff for retailers (collectively, SelfPay®)[1] won several industry awards[2] and the products were compatible with both the iOS and Android mobile platforms for wireless devices and integrated with major credit cards and mobile wallets.

### C. The Patents

13.     Ms. MacKinnon invented the technology embodied in the SelfPay® application and DRA filed and prosecuted to issuance a number of patents derived from that technology. For instance, on February 25, 2014, U.S. Patent Application No. 14/189,623 was filed. It is a continuation of and claimed priority to U.S. Patent Application No. 13/801,132 filed on March 13, 2013 (now U.S. Patent No. 8,720,771), which claimed priority to U.S. Provisional Patent Application No. 61/615,140 filed March 23, 2012, U.S. Provisional Patent Application No. 61/732,268 filed November 30, 2012, and U.S. Provisional Patent Application No. 61/751,653

---

[1] SelfPay® is a registered trademark of Wendy MacKinnon as an individual.

[2] SelfPay® software has won Retail CIO Outlook's Top 10 Retail Mobility Solutions Providers for August 2016; Pymnts.com's Innovation Project 2016's Best POS Innovation – Finalist in March 2016 and Innovation Project; Most Innovative Company – Finalist March 2016; Rice Alliance for Technology and Entrepreneurship; Most Promising IT and web company November 2015; Women in Payments Award for Innovation September 2015; Retail Council of Canada RCC ReBoot Challenge, Finalist June 2015; CNP 2015; CNP Expo, Judges Choice Best Mobile Solution, May 2015; Innotribe's Innotribe Startup Challenge, Finalist June 2014; ACT Canada Cardware, Canadian Payments Innovation, Bronze June 2013.

filed January 11, 2013. After examination, the United States Patent and Trademark Office ("USPTO") issued U.S. Patent No. 9,262,781 ("the '781 Patent"), entitled "System and Method for Facilitating Secure Self Payment Transactions of Retail Goods" on February 16, 2016. Ms. MacKinnon assigned the '781 Patent to DRA, and that Assignment can be found at Reel/Frame No. 032411/0358 of the USPTO Assignment Database. A true and correct copy of the '781 Patent is attached as Exhibit 3.

14. On January 5, 2016, U.S. Patent Application No. 14/988,118 was filed. It is a continuation of and claimed priority to U.S. Patent Application No. 14/189,623 filed on February 25, 2014 (the '781 Patent), which is a continuation of U.S. Patent Application No. 13/801,132 filed on March 13, 2013 (now U.S. Patent No. 8,720,771), which claimed the benefit of U.S. Provisional Patent Application No. 61/615,140 filed March 23, 2012, U.S. Provisional Patent Application No. 61/732,268 filed November 30, 2012, and U.S. Provisional Patent Application No. 61/751,653 filed January 11, 2013. After examination, the USPTO issued U.S. Patent No. 9,934,506 ("the '506 Patent") entitled "System and Method for Facilitating Secure Self Payment Transactions of Retail Goods" on April 3, 2018. Ms. MacKinnon assigned the '506 Patent to DRA, and that Assignment can be found at Reel/Frame No. 045343/0936 of the USPTO Assignment Database. A true and correct copy of the '506 Patent is attached as Exhibit 4.

15. The '781 Patent and the '506 Patent are collectively referred to as "the Patents-in-Suit." These Patents are valid, enforceable and duly assigned to DRA, who has the sole right to sue for infringement thereof and to collect all damages relating thereto.

16. The technology related to the Patents-in-Suit was licensed under a proof of concept and royalty bearing agreement to one Canadian entity in 2013, as well as a partner contract with Visa USA Inc. in 2016 to provide software that would enable Visa USA Inc. to showcase the

SelfPay system to its own clients, but those agreements have since terminated. DRA has since then been unable to successfully license its technology, upon information and belief, due to industry participants, such as Sam's Club, deciding to implement the technology themselves without taking available licenses to it from DRA.

17. The Patents-in-Suit claim specific technologic improvements over prior in-store payment systems and are directed to devices adapted to be used for in-store shopping and complimentary devices for validating purchases on the way out of the store. The elements and combination of elements of these Patents' claims were not well-understood, routine, or conventional to a skilled artisan in the field of in-store purchase application technology prior to Ms. MacKinnon's inventions.

18. The Patents-in-Suit further describe systems that improve the shopping experience for a retailer's customer and increase profits for itself by relying on the reality that people are now as likely to have their smartphone as their wallet during a shopping experience. The Patents-in-Suit thus describe systems that improve the self-payment and check-out experience for in-store purchases being made by customers. Indeed, and in contrast to shopping on a website, customers using systems as described by the Patents-in-Suit may touch, inspect, and compare side-by-side merchandise before deciding to purchase, yet like shopping on a website, it is speedy, private, and requires little prying human interaction.

19. The Patents-in-Suit also disclose systems and methods that improve the shopping experience over the use of self-checkout kiosks that bottleneck the flow of customers at check-out counters during purchasing, while at the same time improve shopping security for a store, because the patented systems avoid paper receipts, which can be falsified, duplicated, etc. Also, importantly, though, the Patents-in-Suit do not preempt all processes for and verification of

payment of goods and services for use with mobile devices, even at brick-and-mortar stores. Indeed, the absence of preemption is evidenced by the sheer number of patents and patent applications cited on the face of the Patents-in-Suit, including U.S. Published Patent Application No. 2012/0284130 to PayPal, and also see https://patents.google.com/patent/US8720771#patentCitations (accessed on May 18, 2021) (showing 109 citations to U.S. Patent No. 8,720,771, from which the '781 Patent is a continuation), with all of these references being incorporated herein by this reference.

20. The claims of the Patents-in-Suit are not directed to a method of organizing human activity, nor are they directed to a fundamental economic practice long prevalent in our system of commerce. Rather, the patented systems and methods overcome technical problems—how to allow a customer to speed through a retail shopping experience at his or her own pace, while reducing complexity and unnecessary and unwanted human interactions, all while improving security of the retailer against loss. Further, the claims of the Patents-in-Suit are narrowly drawn, for example, by requiring "unique tokens" for purchase verification, rather than combining known elements of prior art systems in a generic manner.

21. In short, the technology described by the Patents-in-Suit addresses a technical challenge, fulfilling the needs of customers who prefer the visual and tactile experience of in-person shopping, but also seek the speed and ease of self-checkout, while simultaneously satisfying a retailer's need for security against loss. Thus, the Patents-in-Suit describe systems and methods that improve an in-store experience that is unfettered by queues at the registers, and thereby improve upon early kiosk-payment and paper-receipt-verification systems, with technological improvements to the relevant art.

### D. Sam's Club's Infringing Conduct

22. Sam's Club launched its Scan & Go service in 2016. *See* https://corporate.samsclub.com/newsroom/2020/09/18/loveatfirstscan-how-were-continuing-to-fuel-innovation-with-scan-go (accessed on May 18, 2021). That same year, Sam's Club announced that the service would be extended to all stores. *See* https://www.retailsupplychaininsights.com/doc/sam-s-club-extends-scan-and-go-mobile-checkout-service-to-all-stores-0001 (accessed on May 18, 2021). Upon information and belief, Sam's Club customers can use Scan & Go in all Sam's Club stores in the United States.

23. According to Sam's Club promotional materials, "[t]he Scan & Go feature lets you shop, scan and skip the checkout line." *See* https://www.samsclub.com/content/scan-and-go (accessed on May 18, 2021). Use of Scan & Go involves the following steps:

> **How do I use the Scan & Go feature?**
>
> - Download the Sam's Club app on your iPhone or Android.
> - Tap the Scan & Go icon.
> - Enter the email address associated with your membership and the password of your SamsClub.com account.
> - When you're in the club, scan items as you add them to your cart.
> - When you're done shopping, pay in the app with your preferred method.
> - Show the QR code (verification of your purchase) on your way out.

*Id.* Sam's Club's Accused System is nearly identical to the SelfPay® technology developed by DRA years earlier, and as set forth in the attached claim charts, Sam's Club's use of the Accused System infringes the Patents-in-Suit.

24. As shown in Exhibit 5, which is incorporated by reference as though fully set forth herein, Sam's Club's use of the Accused System meets each and every element of at least Claim 1 of the '781 Patent.

25. As shown in Exhibit 6, which is incorporated by reference as though fully set forth herein, Sam's Club's use of the Accused System meets each and every element of at least Claim 1 of the '506 Patent.

### IV. PRIOR LITIGATION INVOLVING THE PATENTS-IN-SUIT

26. The Patents-in-Suit were previously at issue in *Digital Retail Apps, Inc. v. H-E-B, LP*, Case No. 6:19-cv-00167-ADA (W.D. Tex.) ("the *H-E-B* Litigation"). That case was dismissed on April 7, 2021, without a final judgment on the merits.

27. The court in the *H-E-B* Litigation issued a Claim Construction Order on January 23, 2020. In that Order, the court adopted the following constructions:

| Term | Patent/Claim | W.D. Tex. Construction |
| --- | --- | --- |
| "first communication module" | '506 cls. 1, 13 | Indefinite |
| "spot checking" | '506 cls. 1, 13 | "physically or visually inspecting (1) purchase items and (2) either a receipt or token to verify a consumer's purchase" |
| "wirelessly transmitting said unique token to a retailer electronic device" | '781 cls. 1, 15 | plain-and-ordinary meaning and where the plain-and-ordinary meaning does not include photographing or scanning. |
| "list of goods and services" and "list of goods and services purchased" | '506 cls. 3, 19 | Indefinite |
| "time and place of purchase" | '506 cls. 4, 20 | Indefinite |
| "identity of the consumer who made the purchase" | '506 cls. 5, 21 | Indefinite |

The claims were otherwise afforded their plain and ordinary meaning. The court also rejected H-E-B's argument that claim 8 of the '781 Patent is indefinite.

28. The *H-E-B* constructions have no preclusive effect at least because there was no final judgment on the merits in the *H-E-B* Litigation and DRA had no opportunity to appeal the construction rulings. The *H-E-B* constructions are not binding on this Court or on DRA. DRA believes that the formal claim constructions and indefiniteness rulings entered in the *H-E-B*

9

Litigation are erroneous as a matter of law and DRA reserves the right to seek different constructions in this action.

### COUNT I - INFRINGEMENT OF THE '781 PATENT

29.     The '781 Patent includes 29 claims.  Sam's Club directly infringes one or more claims of the '781 Patent without authority by making and/or using products and systems, including without limitation, the Accused System.  More specifically and without limitation, Sam's Club has been and is directly infringing, either literally or under the doctrine of equivalents, at least Claim 1 of the '781 Patent by making and/or using the Accused System in the United States.  A detailed claim chart showing Sam's Club's infringement of at least one claim of the '781 Patent is attached as Exhibit 5.

30.     Sam's Club's acts of infringement have occurred within this District and elsewhere throughout the United States.

31.     DRA has been damaged and will suffer additional damages due to Sam's Club's infringement.

### COUNT II - INFRINGEMENT OF THE '506 PATENT

32.     DRA repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

33.     The '506 Patent includes 24 claims.  Sam's Club directly infringes one or more claims of the '506 Patent without authority by making and/or using products and systems, including without limitation, the Accused System.  More specifically and without limitation, Sam's Club has been and is directly infringing, either literally or under the doctrine of equivalents, at least Claim 1 of the '506 Patent by making and/or using the Accused System in the United States.  A detailed

claim chart showing Sam's Club's infringement of at least one claim of the '506 Patent is attached as Exhibit 6.

34. Sam's Club's acts of infringement have occurred within this District and elsewhere throughout the United States.

35. DRA has been damaged and will suffer additional damages due to Sam's Club's infringement.

## PRAYER FOR RELIEF

WHEREFORE, DRA respectfully requests that the Court enter judgment as follows:

A. Declaring that Sam's Club has infringed the Patents-in-Suit;

B. Awarding damages in an amount to be proven at trial, but in no event less than a reasonable royalty, for Sam's Club's infringement, including pre-judgment and post-judgment interest at the maximum rate permitted by law;

C. Ordering an award of reasonable attorneys' fees against Sam's Club to DRA as provided by 35 U.S.C. § 285 or other relevant law or provision;

D. Awarding expenses, costs, and disbursements in this action against Sam's Club, including prejudgment interest; and

E. Awarding such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, DRA hereby demands a trial by jury in this action of all claims so triable.

Dated:  May 26, 2021							Respectfully submitted,

By: _____
Michael C. Smith
State Bar No. 18650410
michaelsmith@siebman.com
Siebman, Forrest, Burg & Smith, LLP
113 E. Austin Street
Marshall, TX 75671
Telephone:	903-838-8900
Facsimile:	972-767-4620

Robert R. Brunelli
rbrunelli@sheridanross.com
Matthew C. Holohan
mholohan@sheridanross.com
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO 80202
Telephone:	303-863-9700
Facsimile:	303-863-0223
litigation@sheridanross.com

*Attorneys for Plaintiff Digital Retail Apps, Inc.*